# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JACQUELINE ELAINE JONES | § § § | |
| v. | § | CIVIL ACTION NO. 3:16-CV-2303-S |
| | § § § | |
| CITY OF DALLAS, TEXAS | § | |

## MEMORANDUM OPINION AND ORDER

This Order addresses Defendant City of Dallas's (the "City") motion for summary judgment [21]. The Court grants the motion in part and denies it in part.

### I. BACKGROUND

#### A. *Jones's Employment with the City*

Jacqueline Jones ("Jones") began working for the City in 2000 as a Management Assistant in the City Manager's Office. In 2005, the City transferred her to the Environmental Health Services Department, where she worked as a Senior Contract Compliance Administrator. Jones's basic job duties included ensuring that contracts were carried out according to the scope of services, the law, and other requirements, submitting reimbursements, and monitoring contracts. In 2009, Jones's department merged with the Housing & Community Services Department. Jones's position remained the same, and she received a raise almost every year. She also received a salary increase in 2014 due to an equity adjustment.

In early 2014, the City reassigned Jones to the Homeless Services Division, where she had a new supervisor but continued to perform similar duties. In 2015, Jones reported to a new supervisor, who assigned her duties from Coordinator IIIs and additional administrative duties.

### B. *Roger Demas's and David Silva's Employment with the City*

Jones bases several claims on comparisons to two male coworkers, Roger Demas ("Demas") and David Silva ("Silva"). Demas, working for Enterprise, managed the Mortgage Loan Assistance Program ("MAP") until 2012, when the City brought the program in-house. At that time, the City decided to hire a Coordinator IV to run the program. The parties dispute whether the City advertised the position as "MAP Coordinator IV" or "Coordinator IV (Housing)." Bilingual skills and a Residential Mortgage Loan Originator License were preferred qualifications for the position. Demas possessed both, and the City selected him. In this position, Demas ran the program, supervised four other employees, and created a database to support the program. In 2013, the City appointed Demas Interim Manager II in the Housing Department's Development Division. Demas's salary was higher than Jones's at all relevant times.

Silva also worked for MAP before the City brought it in-house. The City advertised for either a "Contract Compliance Administrator, Senior" or a "MAP Sr. Contract Compliance Administrator." Bilingual skills and a Residential Mortgage Loan Originator License were preferred qualifications for the position. Silva possessed both and was hired for the position. In this position, Silva supervised two employees, served as the primary trainer for MAP, conducted presentations, and marketed the program, among other things. When Demas became Interim Manager II and, later, when he resigned, Silva took on his duties as well. In November 2014, he became a Coordinator IV. Silva's salary was higher than Jones's at all relevant times.

### C. *Jones's Charge of Discrimination*

In August of 2014, Jones went to the Dallas District Office of the Equal Employment Opportunity Commission ("EEOC"). The EEOC later called her to schedule an appointment for

September 8, 2014. She met with investigator Dawn Lewis, who said she would review Jones's case. In January of 2015, Lewis called Jones to tell her she needed to complete the final level of the City's grievance process before filing an EEOC charge. Jones repeatedly tried to contact Lewis after that but did not receive a response until April 14, when Lewis's former supervisor, Lillie Wilson, called to tell her that Lewis had resigned. Jones hired an attorney and filed a charge of discrimination with the EEOC (the "Charge") on May 20, 2015. The Charge references her July 2013 internal grievance, retaliation based on that, disparity of pay between Jones and Demas, and the City's failure to promote Jones to Manager II in August 2014. Jones also mentions in the Charge that "[t]his is not the first time the City has passed me over for promotion." Pl.'s Br. at 28.

After receiving her right to sue letter from the EEOC, Jones brought this action alleging discriminatory failure to promote, retaliation, and pay disparity, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). She also alleges pay disparity in violation of the Equal Pay Act ("EPA"). Jones claims that the City passed her over for promotion to five different positions: Safety Officer, Interim Manager II, Manager II, Business or General[1], Manager III, Housing, and Manager III, Inspector.

## II.  THE COURT GRANTS IN PART AND DENIES IN PART THE MOTION FOR SUMMARY JUDGMENT

### A.  *Summary Judgment Standard*

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] The parties dispute which position Jones is actually referencing. In her complaint, Jones says "Manager II, Business." However, she says Rod Beck received the position over her. Beck was selected for the "Manager II, General" position. Jones says the City "tweaked" the position so that she would not be eligible and that they changed the title from Business to General. Pl.'s Br. 34.

3

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, she "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [her] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## B. *The Court Denies Summary Judgment on Jones's Race and Sex Discrimination Claims*

### i. *A Fact Issue Exists As to Whether Jones Administratively Exhausted Her Failure to Promote Claims*

To bring a claim under Title VII, a plaintiff must first exhaust her administrative remedies. To do so, she must file a charge with the EEOC that identifies the employment practices she is challenging. 42 U.S.C. §§ 2000e-5(e)(1), (f)(1). Upon judicial review, courts in the Fifth Circuit determine what is to be reviewed "somewhat broadly" and review both what is contained in the four corners of the charge and "the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Thus, courts "look slightly beyond [the charge's] four corners, to its substance rather than its label." *Pacheco*, 448 F.3d at 789 (citation omitted). This approach balances the policy of protecting "unlettered lay persons making complaints without legal training or the assistance of counsel" on the one hand and the policy of "encouraging voluntary compliance through EEOC conciliation" on the other. *Mathes v. Harris Cty.*, 31 F. App'x 835, 2002 WL 243260, at *3 (5th Cir. Jan. 17, 2002) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993); *Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir. 1981)).

The City contends that Jones's failure to promote claims do not fall within the scope of her EEOC charge. The Court holds that Jones has raised a genuine issue of material fact as to this element.

### ii. *A Fact Issue Exists As to Whether Jones's Failure to Promote Claims Are Time-Barred*

In deferral states, such as Texas, a Title VII plaintiff must file her EEOC charge within three hundred days of the date on which the alleged unlawful employment practice occurred. *See*

42 U.S.C. § 2000e-5(e)(1); *Lahr v. Fulbright & Jaworski, L.L.P.*, No. 3:94-CV-0981, 1996 WL 673438, at *1 (N.D. Tex. Aug. 15, 1996). This requirement is not a jurisdictional requirement, "but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Equitable tolling is appropriate when, *inter alia*, the EEOC misleads a plaintiff as to her rights or makes a procedural error. *McKee v. McDonnell Douglas Tech. Servs. Co.*, 700 F.2d 260, 263-65 (5th Cir. 1983). "The burden is on the plaintiff to show a factual basis to toll the limitations period." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citing *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)).

The parties do not dispute that the actions giving rise to many of Jones's claims occurred outside of the 300-day window. However, Jones alleges that an EEOC employee misled her as to her rights by indicating that she was required to complete the City's internal grievance process before filing a charge. The Court holds that Jones has introduced sufficient evidence to raise a genuine fact issue regarding equitable tolling.

   iii.   *A Fact Issue Exists As to Whether Jones Has Established a Prima Facie Case of Race and Sex Discrimination*

Title VII makes it unlawful for employers to "discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Under the burden-shifting test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, a plaintiff relying on circumstantial evidence to claim discriminatory treatment must first establish a prima facie case of discrimination. *See Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 362-63 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). In a failure to promote case, the plaintiff satisfies this burden by showing that: "(1) she is a member of the

6

protected class; (2) she sought and was qualified for a position for which applicants were being sought; (3) she was rejected for the position; [and] (4) the employer hired a person outside of the plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications." *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015). The plaintiff need not formally apply for the disputed position if "[a] consistently enforced discriminatory policy . . . deter[s] job applications." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 364 (1977). If the plaintiff establishes a prima facie case, the burden shifts to the employer to put forth a legitimate, non-discriminatory reason for the failure to promote. *See McMullin*, 782 F.3d at 258. If the employer does so, the presumption of discrimination disappears, and the plaintiff must show that the proffered reason is a pretext for race- or sex-based discrimination. *See id.*

The City's only argument regarding the substantive requirements of Title VII race and sex discrimination is that Jones cannot establish a prima facie case because she did not apply for the Manager II, General position. The City contends that Manager II, General is the only position that Jones administratively exhausted and that is not barred by the statute of limitations. A genuine factual dispute exists as to whether Jones applied for this position. Jones's complaint cites the position for which Rod Beck was selected, which was Manager II, General. Jones did not apply for that position. However, Jones argues that she applied for Manager II, Business and that the City then "tweaked" the posting so that the position was Manager II, General. Pl.'s Br. 34. The City did so, Jones argues, so that it could say she never applied. Jones has satisfied her burden of putting forth some evidence to show that there is a genuine dispute as to whether she applied for the Manager II, General position, and summary judgment is inappropriate.

Because there is a genuine factual dispute regarding administrative exhaustion, timeliness, and the substantive requirements of Title VII, the Court denies summary judgment on Jones's discriminatory failure to promote claims.

### C. *The Court Grants Summary Judgment on Jones's Retaliation Claims*

Title VII forbids "employer actions that 'discriminate against' an employee . . . because [she] has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To state a cause of action for retaliation, a plaintiff must allege that: (1) she engaged in an activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001). An adverse employment action must be "materially adverse," meaning it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (citation omitted).

Jones claims that the City retaliated against her by failing to promote her and sometimes not even bothering to interview her for promotions, increasing her workload, manipulating the promotion process, and reassigning her to a position of less status. The City argues that she failed to administratively exhaust and/or failed to state a prima facie case for all of her retaliation claims.

Jones failed to administratively exhaust her retaliatory failure to promote claims. In the Charge, Jones alleged that the City violated Section 703 of Title VII (disparate treatment) by failing to promote her. Def.'s App. 44. She separately alleged that the City violated Section 704 of Title VII (retaliation) by increasing her workload and paying her less. *Id.* Nowhere does the

Charge allege retaliatory failure to promote. "[D]iscrimination and retaliation claims are distinct, and the allegation of one in an EEO charge does not exhaust a plaintiff's remedies as to the other." *Bouvier v. Northrup Grumman Ship Sys., Inc.*, 350 F. App'x 917, 2009 WL 3444765, at *3 (5th Cir. Oct. 26, 2009). The Fifth Circuit has created a narrow exception for retaliation claims that grow out of an EEOC charge alleging discrimination. *See Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981). However, that exception is inapplicable when, as here, "the alleged retaliation occurs *before* the filing of the EEOC charge." *Eberle v. Gonzales*, 240 F. App'x 622, 2007 WL 1455928, at *5 (5th Cir. May 18, 2007). The parties do not dispute that the alleged retaliation occurred before Jones filed her Charge, so the *Gupta* exception does not apply. Because Jones did not administratively exhaust her claim for retaliatory failure to promote, the Court grants the City's motion for summary judgment on this claim.

Jones also argues that the City retaliated against her by offering her an interview for a promotion while she was on medical leave. This claim does not appear in the Charge. Further, as discussed above, Jones did not allege retaliation in connection with the failure to promote claims in her Charge. Because Jones has failed to exhaust this claim, the Court grants the City's motion for summary judgment.

Jones argues that the City retaliated against her by reassigning her to a position that enjoys less status. This claim does not appear on the face of her Charge. A complaint "may encompass any kind of discrimination like or related to allegations contained in the charge." *Sanchez*, 431 F.2d at 466. However, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). A retaliatory reassignment is

a distinct employment decision that is not like or related to failure to promote, increased workload, or pay disparity. The City would not have been on notice of this claim based on the Charge.

Additionally, lateral reassignments, with no decrease in salary or change in job responsibilities, generally are not materially adverse. "[W]hether an employment action is materially adverse is an objective query," and an employee's "subjective preference is not enough" to render a reassignment materially adverse. *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). Jones argues that the Homeless Services Division position is one the City "knows" enjoys less status. Compl. ¶ 85(B). Jones cites to no record evidence or factual allegations to support this speculative assertion. Like the *Jenkins* plaintiff, Jones "relies solely on [her] subjective impressions for support." *Jenkins*, 784 F.3d at 269. As the *Jenkins* court found, subjective impressions are insufficient. *Id.*

When a plaintiff fails to introduce evidence of consequences like a reduction in salary, "a loss of standing with [her] fellow employees, a decrease in benefits, a loss of prestige, or a lessening of responsibilities," she fails to prove an adverse employment action. *Vicknair v. La. Dep't of Pub. Safety & Corr.*, 555 F. App'x 325, 331 (5th Cir. Feb. 4, 2014). Jones has not introduced evidence that her reassignment came with a single negative consequence. "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *White*, 548 U.S. at 67. Because Jones has failed to show any injury or harm resulting from her lateral reassignment, and because she failed to administratively exhaust this claim, the Court grants summary judgment on Jones's retaliatory reassignment claim.

The City argues that Jones's increased workload claim is time-barred. Because equitable tolling may apply, summary judgment is inappropriate on this basis.

However, the City also argues that Jones cannot state a prima facie case of retaliation on her increased workload claim. Jones has failed to show that her increased workload is an adverse employment action in this case. As stated above, an employment action must be materially adverse to support a claim of retaliation. An increased workload, without more, generally is not adverse employment action. *See, e.g., Obondi v. UT Southwestern Medical Ctr.*, No. 3:15-cv-2022, 2017 WL 2729965, at *7 (N.D. Tex. June 23, 2017). Although an increased workload can constitute an adverse employment action in certain cases, Jones has adduced no evidence to show that hers is one of those cases. Jones claims in her declaration that her supervisors gave her more work, but she suggests that they did so because she excelled at her job. Pl.'s App. 6-8. Nowhere does she point to evidence that the increase was materially adverse in any way. Because Jones has failed to show any injury or harm resulting from the increased workload, the Court grants summary judgment on her retaliatory increased workload claim.

For the foregoing reasons, the Court grants summary judgment on all of Jones's Title VII retaliation claims.

### D. *The Court Grants in Part and Denies in Part Summary Judgment on Jones's Equal Pay Act Claims*

To establish a cause of action for pay disparity under the EPA, the plaintiff must first establish a prima facie case. The plaintiff must show that: (1) her employer is subject to the EPA; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison. *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993). If

the plaintiff makes such a case, the burden shifts to the defendant to show by a preponderance of the evidence that the pay differential is justified pursuant to one of the EPA's four affirmative defenses. *King v. Univ. Healthcare Sys. L.C.*, 645 F.3d 713, 723 (5th Cir. 2011). One such exception is that the differential is based on any factor other than sex. 29 U.S.C. § 206(d)(1).

In its brief, the City focuses only on whether Jones's position required the same skill, effort, and responsibility as Silva's and Demas's positions. This prong requires a "substantial identity of job functions," as "Congress intended to permit employers wide discretion in evaluating work for pay purposes." *Hodgson v. Golden Isles Convalescent Homes, Inc.*, 468 F.2d 1256, 1258 (5th Cir. 1972). As an initial matter, the City notes that the longest possible statute of limitations for an EPA claim is three years. 29 U.S.C. § 255(a). Because Jones filed suit on August 9, 2016, she can only recover as to Demas for paychecks issued between August 9, 2013 and March 11, 2014 (the date Demas resigned).

The City argues that both Demas's and Silva's positions required greater skill, effort, and responsibility than Jones's position. In response, Jones makes no argument other than to quote her own declaration at length. Regarding Demas, she says, "Demas and I shared the same duties when he was a Manager II handling the Neighborhood Stabilization Program and then the Neighborhood Stabilization [P]rogram which was assigned to me on or about October 15, 2013." Pl.'s Br. 39. She also alleges that "Demas never exceeded me in leadership and responsibilities." *Id.* Regarding Silva, she says, "I did the same and/or similar work as him." *Id.* Her assertion that she and Demas had the same duties while working for the Neighborhood Stabilization program is sufficient to survive summary judgment. However, her averment that she performed the same and/or similar work as Silva is the type of "unsubstantiated assertion[]" that does not suffice when the party bearing the burden of proof at trial is attempting to survive summary

judgment. *Douglass*, 79 F.3d at 1429. The Court grants summary judgment on Jones's EPA claim with respect to Silva.

Jones has introduced sufficient evidence that the pay differential between her and Demas was not based on a factor other than sex. In Jones's declaration, she directly compares her experience to Demas's and demonstrates that she had higher levels of education, more job-specific training, a longer tenure with different levels of the government, and military experience. The City has not established "beyond peradventure" that the pay differential was based on a factor other than sex. *Fontenot*, 780 F.2d at 1194. Therefore, the Court denies summary judgment on Jones's EPA claim with respect to Demas.

### E.   *The Court Grants Summary Judgment on Jones's Title VII Pay Disparity Claims*

To establish a cause of action for disparity under Title VII, the plaintiff must show that "[she] was a member of a protected class and that [she] was paid less than a non-member for work requiring substantially the same responsibility." *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008) (citing *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984)). If the plaintiff makes such a case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the pay differential. *Taylor*, 554 F.3d at 522 (citing *Ross v. Univ. of Tex. at San Antonio*, 139 F.3d 521, 525 (5th Cir. 1998)). Then, the burden shifts back to the plaintiff to show that the proffered reason is pretextual. *Id.*

Although the Title VII standard is different from the EPA standard, the analysis is nearly identical in this case. However, there is one critical difference. The Court may only consider acts of discrimination that occurred within 300 days before Jones filed her Charge. 42 U.S.C. § 706(e). Because Demas resigned more than 300 days before Jones filed her charge, Jones cannot

state a claim as to him.[2] Jones disputes whether her circumstances were "nearly identical" to Silva's by referencing her EPA argument. As discussed above, simply saying that she "did the same and/or similar work as him" is not sufficient. Pl.'s Br. 39. Thus, the Court grants the City's summary judgment motion on both of Jones's Title VII pay disparity claims.

## IV. CONCLUSION

For the reasons stated above, the Court grants in part and denies in part the City's motion for summary judgment.

**SO ORDERED.**
SIGNED May 29, 2018.

KAREN GREN SCHOLER
**UNITED STATES DISTRICT JUDGE**

---

[2] During the Court's April 17, 2018 motion hearing, Jones's counsel stipulated on the record that Jones is not pursuing a Title VII pay disparity claim with respect to Demas.